IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

TATYONNA R. BURKENBINE,

               Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

               Defendant.

Case No. 3:14-cv-01539-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

      Tatyonna R. Burkenbine ("plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Based on a careful review of the record, the Commissioner's decision is affirmed.

\ \ \ \ \

*Procedural Background*

Plaintiff applied for SSI on January 27, 2011, alleging disability as of January 1, 2008, due to "stomach problems, mental health, asthma, and hormone imbalance." (Tr. 77.) Her application was denied initially and upon reconsideration. (Tr. 85, 95.) A hearing convened on March 12, 2013, before an Administrative Law Judge ("ALJ"). (Tr. 38-75.) On April 26, 2013, the ALJ issued a decision finding plaintiff not disabled. (Tr. 11-31.) Plaintiff timely requested review of the ALJ's decision and, after the Appeals Council denied review, plaintiff filed a complaint in this court. (Tr. 1-3.)

*Factual Background*

Born on March 27, 1995, plaintiff was 12 years old on the alleged onset date of disability and an 18-year-old high school student at the time of the hearing. (Tr. 38, 40-41, 77.) Because plaintiff had not reached 18 years of age by the alleged onset date, her disability was assessed using both the child and adult standards of review.

*Child Standard of Review*

For claimants under the age of 18, the Social Security Administration has established a three-step sequential evaluation process to determine whether the claimant is disabled. 20 C.F.R. § 416.924(a). At step one, the ALJ determines if the claimant is able to engage in substantial gainful activity; if so the plaintiff is not disabled. At step two, the Commissioner resolves whether the claimant has a "medically severe impairment or combination of impairments." 20 C.F.R. § 404.1520(c). For an individual who has not attained age 18, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. If the claimant does not have a medically determinable severe impairment, the claimant is not disabled.

Page 2 - OPINION AND ORDER

If the evaluation proceeds to step three, the Commissioner must determine whether the claimant has an impairment or combination of impairments that meets or functionally equals the Listings. In determining whether an impairment or combination of impairments equals a Listing, the Commissioner must assess the claimant's functioning in terms of six "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) self care; and (6) health and physical well-being.

The Commissioner must compare how appropriately, effectively, and independently the claimant performs activities compared to the performance of other children of the same age who do not have impairments. To functionally equal the listings, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d).

In assessing whether the claimant has "marked" or "extreme" limitations, the Commissioner must consider the functional limitations from all medically determinable impairments, including any impairments that are not severe, as well as the interactive and cumulative effects of the claimant's impairment(s) in any affected domain. 20 C.F.R. § 416.926a(a). A claimant has a "marked" limitation in a domain when her impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities. Day-to-day functioning may be seriously limited when the impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities. 20 C.F.R. § 416.926a(e)(2).

A "marked" limitation is:

(1) A limitation that is "more than moderate" but "less than extreme."

(2) The equivalent of functioning that would be expected on standardized testing

with scores that are at least two, but less than three, standard deviations below the mean.

(3) A valid score that is two deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and her day-to-day functioning in domain-related activities is consistent with that score.

(4) For the domain of health and physical well-being, frequent episodes of illness because of the impairment(s) or frequent exacerbations of the impairment(s) that results in significant, documented symptoms or signs that occur: (a) on an average of three times per year, or once every four months, each lasting two weeks or more; (b) more often that three times per year or once every four months, but not lasting two weeks; or (c) less often than an average of three times per year or once every four months but lasting longer than two weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity.

*Id.*

A claimant has an "extreme" limitation in a domain when her impairment(s) interferes "very seriously" with her ability to independently initiate, sustain, or complete activities.  Day-to-day functioning may be very seriously limited when her impairment(s) limits only one activity or when the interactive and cumulative effects of her impairment(s) limit several activities.  20 C.F.R. § 416.92a(e)(3).

An "extreme" limitation is:

(1) A limitation that is more than "marked."

(2) The equivalent of functioning that would be expected on standardized testing with scores that are at least three standard deviations below the mean.

(3) A valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and her day-to-day functioning in domain-related activities is consistent with that score.

(4) For the domain of health and physical well-being, episodes of illness or exacerbations that result in significant, documented symptoms or signs substantially

in excess of the requirements for showing a "marked" limitation.

*Id.*

### Adult Standard of Review

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 42 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity;" if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b).

At step two, the Commissioner resolves whether the claimant has a "medically severe

Page 5 - OPINION AND ORDER

impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner evaluates whether the claimant's impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. § 404.1520(d). If so, the claimant is presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant still can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141.

At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. *Id.* at 142; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

*The ALJ's Findings*

As a threshold matter, the ALJ found plaintiff was in the "Adolescents (age 12 to attainment of age 18)" age group on January 27, 2011, the date the application was filed. (Tr. 15.) The plaintiff attained age 18 on March 26, 2013. *Id.*

At step one of the three-step sequential child evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the application date. *Id.* At step two, the ALJ found plaintiff, before attaining age 18, had the following severe impairments: anxiety disorder, dysthymic disorder, somatoform disorder, and gastritis/duodenitis. (Tr. 16.)

Page 6 - OPINION AND ORDER

At step three, the ALJ found that before attaining age 18, the plaintiff did not have an impairment or combination of impairments that met or medically equaled one of a number of impairments that are so severe as to preclude substantial gainful activity. (Tr. 17.)

Further, the ALJ found that before attaining age 18, the plaintiff did not have an impairment or combination of impairment(s) that functionally equaled the listings, based on the following findings: before attaining age 18, the plaintiff had (a) no limitation in acquiring and using information; (b) less than marked limitation in attending and completing tasks; (c) less than marked limitation in interacting and relating with others; (d) less than marked limitation in moving about and manipulating objects; (f) less than marked limitation in the ability to care for herself; and (g) less than marked limitation in health and physical well-being. (Tr. 22-27.) Accordingly, the ALJ found plaintiff was not disabled prior to age 18. (Tr. 27.)

The ALJ continued to evaluate plaintiff using the adult standard of review. The ALJ found plaintiff had not developed any new impairment or impairments since attaining age 18. *Id.* The ALJ's child step one finding was carried over into the adult analysis. *See* (tr. 15). At step two, the ALJ found that since attaining age 18, plaintiff continued to have severe impairments or combination of impairments. *Id.* At step three, the ALJ found plaintiff's impairment(s) did not meet or equal the requirements of a listed impairment under 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 28.)

Accordingly, the ALJ continued the sequential evaluation process to determine how plaintiff's medical limitations affected her ability to work. The ALJ resolved that plaintiff had the following residual functional capacity ("RFC"):

> . . . [she can] perform a full range of work at all exertional levels[,] but with the following nonexertional limitations: a restriction of frequent interaction with coworkers or supervisors and the ability to

Page 7 - OPINION AND ORDER

remember, understand, and carry out instructions and tasks generally
associated with an SVP of 1 to 4.

(Tr. 28.)

At step four, the ALJ found plaintiff had no past relevant work. *Id.* At step five, the ALJ

determined plaintiff had the RFC to perform unskilled work at all exertional demand levels. (Tr.

30.) Therefore, the ALJ concluded plaintiff was not disabled under the Act. (Tr. 31.)

*Discussion*

Plaintiff argues the ALJ erred by erroneously discrediting: (1) plaintiff's symptom testimony;

(2) treating physician Shannon Brigman, M.D.; and (3) lay witness testimony of plaintiff's mother

and schoolteacher.

I.      Plaintiff's Credibility

The Ninth Circuit relies on a two-step process for evaluating the credibility of a claimant's

testimony about the severity and limiting effect of the stated symptoms. *Vasquez v. Astrue*, 572

F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue*, 503 F.3d 1028, 1035-36 (9th Cir.

2007)). "First, the ALJ must determine whether the claimant has presented objective medical

evidence of an underlying impairment which could reasonably be expected to produce the pain or

other symptoms alleged." *Lingenfelter*, 503 F.3d at 1036 (citation and quotation marks omitted).

Second, absent evidence of malingering, "the ALJ can reject the claimant's testimony about the

severity of her symptoms only by offering specific, clear and convincing reasons for doing so."

*Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Further, an ALJ "may consider . . . ordinary

techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent

statements concerning the symptoms, . . . [or] other testimony that appears less than candid . . . ."

*Id.* at 1284. However, a negative credibility finding made solely because the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence" is legally insufficient. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Nevertheless, the ALJ's credibility finding may be upheld even if not all of the ALJ's rationales for rejecting claimant testimony are upheld. *See Batson*, 359 F.3d at 1197.

Here, the ALJ found plaintiff's "testimony and allegations concerning her subjective complaints and limitations were not convincing." (Tr. 21.) Specifically, the ALJ noted plaintiff's symptom allegations were inconsistent with the medical record, she had unexplained gaps in medical treatment, and did not always follow her physician's advice. (Tr. 20-21.) In support of the ALJ's first rationale, he noted "there were periods of relief from [plaintiff's] complaints . . . in February 2011, a chart notation recounted that the [plaintiff] felt improvement in her abdominal pain and nausea to a significant extent using Zantac." (Tr. 20.) Although Dr. Brigman's February 28, 2011 chart note is consistent with the ALJ's finding, the plaintiff argues the ALJ failed to account for her symptom complaints in contemporaneous visits, including a March 10, 2011 report to Dr. Harris that plaintiff's abdominal pain prevented her from attending school for the previous two weeks. (Tr. 370); Pl.'s Br. 21. Plaintiff further argues that although her symptoms decreased in April 2011, they resurfaced in May 2011. Pl.'s Br. 21. Plaintiff also reported abdominal pain in January 2012, but Dr. Brigman noted it was unclear if plaintiff was taking her medications at the time. (Tr. 467.) Plaintiff subsequently began taking her medication, and at a "well child check" the following month, reported her pain was under better control. (Tr. 461.) Plaintiff then went ten months without visiting Dr. Brigman's office until she returned in December 2012 for "stomach trouble." (Tr. 20, 455.) Additionally, a December 2012 mental health assessment noted plaintiff's

Page 9 - OPINION AND ORDER

relationship with her mother was "troubled," and connected her stress with "more medical GI problems." (Tr. 451.)

The ALJ summarized this evidence, and found plaintiff's problems waxed and waned depending on her living situation. (Tr. 20.) The ALJ inferred that when plaintiff was taking her medication as directed, her symptoms did not require visits to her physician. *Id.* The ALJ also noted plaintiff did not follow Dr. Brigman's advice relative to her mental impairments. (Tr. 21.) Indeed, Dr. Brigman's January 31, 2012 chart note indicates plaintiff failed to follow-up with counseling as planned. (Tr. 467.)

While plaintiff argues the ALJ's conclusion was the result of "ignoring competent evidence in the record that suggests the opposite result," the argument is unavailing as the ALJ's recitation of the facts is accurate. Pl.'s Br. 21 (quoting *Gallant v. Heckler*, 753 F.3d 1450, 1456 (9th Cir. 1984)). The medical evidence supports the ALJ's finding that plaintiff's symptoms waxed and waned. (Tr. 451.) Accordingly, the finding that plaintiff had gaps in her treatment, including a ten-month gap, and appeared to improve when taking her prescribed medication, is a clear and convincing reason to discredit her testimony of constant pain. *See Tommasetti*, 533 F.3d at 1039 (ALJ may consider unexplained or inadequately explained failure to seek treatment or follow prescribed course of treatment). While plaintiff argues there are alternative explanations, the ALJ's rationales are consistent with substantial evidence and therefore upheld. *See Lewis*, 498 F.3d at 911.

The ALJ further discredited plaintiff's testimony, in part, for her failure to attend therapy despite directions to do so from Dr. Brigman. However, the Ninth Circuit does not recognize the failure to seek treatment for mental impairments as a clear and convincing reason to impugn her

Page 10 - OPINION AND ORDER

credibility. *See Garrison*, 759 F.3 at 1018 n.24; *Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012). Thus, the ALJ's rational was not valid.

The ALJ further found plaintiff's subjective complaints inconsistent with the objective medical evidence. As explained, despite plaintiff's March 10, 2011 allegation of inability to attend school due to abdominal pain for the previous two weeks, Dr. Brigman reported that just 12 days earlier, plaintiff reported feeling significantly better with a new prescription. *Compare* (tr. 370) *to* (tr. 448). While inconsistency with the medical record alone is not a valid reason to discredit plaintiff, it was appropriate for the ALJ to consider the combination of lack of medical evidence as well as gaps in treatment for her pain symptoms. To the extent the ALJ erroneously considered plaintiff's failure to attend therapy as directed by Dr. Brigman, the ALJ's overall credibility finding is nonetheless valid based on the other reasons proffered. *See Batson*, 359 F.3d at 1197.

II.     Medical Opinion Evidence

    A. *Whether Plaintiff Meets a Child Listing*

Plaintiff argues the ALJ failed to properly evaluate medical opinion evidence at step three. Notably, Dr. Brigman authored a letter on March 8, 2013, asserting that plaintiff met Child Listing 112.07 for Somatoform disorder. (Tr. 470-71.) An ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Nonetheless, treating or examining physicians are owed deference and will often be entitled to the greatest, if not controlling, weight. *Orn*, 495 F.3d at 633

(citation and internal quotation omitted).  An ALJ can satisfy the substantial evidence requirement by setting out a detailed summary of the facts and conflicting evidence, stating his interpretation, and making findings. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600-01 (9th Cir. 1999). However, "the ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citation omitted).  On this record, the treating and examining doctors' opinions are contradicted by four state medical examiners. (Tr. 80-84, 89-93.)  Accordingly, the ALJ's reasons for rejecting the treating and examining physicians must be specific and legitimate, and supported by substantial evidence. *See Garrison*, 759 F.3d at 1012.

The ALJ considered Dr. Brigman's letter and agreed plaintiff met the requisite "A" criteria under the Listing, but found plaintiff did not fulfill the "B" criteria. (Tr. 18.)  Plaintiff contends she has provided substantial evidence establishing the "B" criteria. Pl.'s Br. 16-17; Pl.'s Reply 2-8. Child Listing 112.07 covers somatofom disorder, which is "manifested by physical symptoms for which there are no demonstrable organic findings or known physiologic mechanisms[.]" 20 C.F.R. Part 404, Subpart P, App. 1, § 112.07.  To qualify under the listing, plaintiff must show a "nonorganic disturbance" in one of a number of major body systems, including subpart "g", "digestion or elimination." *Id.* at (A)(3).  The parties do not dispute plaintiff meets the "A" criteria. (Tr. 18.)  In order to satisfy the "B" criteria, plaintiff must establish two requisites in Listing 112.02 (B)(2)(a-d). 20 C.F.R. Part 404, Subpart P, App. 1, § 112.07 (citing Listing 112.02).  Dr. Brigman opined plaintiff met subsection (b) for "[m]arked impairment in age-appropriate social functioning" and subsection (d) for "[m]arked difficulties maintaining concentration, persistence, or pace." *Id.*, (Tr. 470-71).  The ALJ refuted Dr. Brigman's opinion, finding the objective medical evidence did

not reflect "impaired social functioning or personal functioning." (Tr. 18.)

Plaintiff first argues the ALJ failed to specifically identify evidence that contradicted Dr. Brigman's opinion. Pl.'s Br. 17-18; Pl.'s Reply 2 (quoting *Regennitter v. Comm'r of Social Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (the ALJ must set forth his own interpretation of the medical evidence and explain why the ALJ's, rather than the doctor's, are correct)). Plaintiff contends the ALJ's failure to explain his finding is reversible error, as the "court cannot affirm an ALJ's finding on a ground or evidence not used by the ALJ himself." Pl.'s Reply 2 (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009)). However, independent court review establishes the ALJ provided ample explanation of his interpretation of the medical evidence as it relates to social and personal functioning in the portion of the decision regarding whether plaintiff *equals* a Listing. *See* (tr. 19-27). Accordingly, plaintiff's contention that the ALJ simply ignored the opinion or rejected it without explanation lacks merit. As the reasons for discrediting Dr. Brigman's opinion are equally applicable to either the "meets a listing" or "equals a listing," the ALJ did not err.

Moreover, even if the court were to find the ALJ erred by failing to find plaintiff *meets* the listing at issue because the ALJ simply disregarded a medical opinion, the error is nonetheless harmless when the ALJ subsequently considers that medical evidence and finds plaintiff does not equal a listing. *See* 20 C.F.R. § 404.1526(b)(3) ("If you have a combination of impairments, no one of which meets a listing . . . we will compare your findings with those for closely analogous listed impairment. If the findings . . . are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing."). Thus, plaintiff's assignment of error is unavailing.

Plaintiff argues the evidence and the ALJ's interpretation of the evidence is inadequate to discredit Dr. Brigman's opinion. Pl.'s Reply 2. With regard to social and personal functioning, Dr. Brigman opined plaintiff had "marked" limitations and "misses so much school she has difficulty making and sustaining friendships." (Tr. 471.) The ALJ disagreed, finding plaintiff's limitation in social functioning "mild." (Tr. 18.) In support, the ALJ noted plaintiff's testimony that she spent summers involved in activities such as swimming, walking around town, going to the movies, and doing things with her friends. (Tr. 20, 48.) The ALJ elaborated further on plaintiff's social functioning in evaluating the "Interacting and Relating with Others" domain. (Tr. 24.) He noted plaintiff had friends and exhibited behaviors that were viewed as normal. (Tr. 25, 374.) The ALJ also noted plaintiff's teacher generally found either "no problem" or "slight problem" in interacting and relating with others. (Tr. 25, 200.) The ALJ acknowledged plaintiff's testimony that when hanging out with friends, she would sometimes feel the need to step away due to anxiety. (Tr. 24, 54.) The ALJ also indicated that despite the anxiety plaintiff described, he accorded "great weight" to four agency medical examiners who found less than marked limitations in interacting and relating with others. (Tr. 21, 81, 91.)

Plaintiff contends the ALJ misinterpreted the evidence regarding social functioning, primarily citing her mother's lay testimony. Pl.'s Reply 2-4. Plaintiff contends the ALJ failed to properly evaluate her "capacity to form appropriate, stable, and lasting relationships" and her allegation of "isolation, withdrawal, and inappropriate or bizarre" behaviors in social settings. Pl.'s Reply 3 (citing § 112.07(B)(2)). Plaintiff's mother indicated plaintiff has no friends her own age, has trouble making friends, and is rejected by her classmates because she attended so little school due to her gastrointestinal impairment and anxiety. Pl.'s Reply 3-4; (tr. 67-68, 71). However, the

Page 14 - OPINION AND ORDER

ALJ specifically explained both plaintiff's and her mother's allegations were contradicted by plaintiff's testimony at the hearing, she had friends and participated in a number of activities. (Tr. 22.) As noted above, the ALJ explained that plaintiff's teacher did not generally identify more than "slight problem[s]." (Tr. 25.) Despite plaintiff's alternative interpretation, the ALJ's finding was, therefore, reasonably based on substantial evidence in the record. The court may not substitute its judgment for that of the ALJ's in such circumstances. *See Tackett v. Apfel*, 180 F.3d 1094,1098 (9th Cir. 1999).

Plaintiff also alleges error in the ALJ's statement that "[a]ny problems in this area [social functioning] appear to be related to those occasions in which she is feeling ill, thereby preventing her from interacting with others. (Tr. 22.) Plaintiff argues the ALJ did not acknowledge plaintiff's absences are "the reason she meets the listings" and "an indication plaintiff is not functioning, socially or otherwise, due to her anxiety symptoms." Pl.'s Reply 4. However, plaintiff's argument is without merit. As described above, social functioning is evaluated according to a plaintiff's "capacity to form appropriate, stable, and lasting relationships." § 112.07(B)(2). The ALJ found plaintiff's social functioning problems at school were related to absenteeism rather than an incapacity to form relationships. (Tr. 24.) The ALJ thereby inferred that any social functioning problems are not primarily caused by the severe impairments identified in step two, but rather her poor attendance, which was attributed to a number of causes. (Tr. 24.) Plaintiff proffers an alternative interpretation of the evidence, but again, as the ALJ's interpretation is specific, rational, and based on substantial evidence, the finding must be upheld. *Tackett*, 180 F.3d at 1098. For these reasons, the ALJ did not commit reversible error in rejecting Dr. Brigman's opinion of plaintiff's social functioning.

The ALJ also discredited Dr. Brigman's opinion that plaintiff had markedly impaired age-appropriate personal functioning. (Tr. 18, 471.) Although personal functioning is covered under § 112.02(B)(2)(c), Dr. Brigman indicated it applied to subpart (d), which appears to have caused confusion in the ALJ's decision. (Tr. 18.) It is unclear if Dr. Brigman intended to indicate plaintiff had marked difficulty in personal functioning aside from plaintiff's allegedly marked limitation in social functioning. *See* (tr. 471). Regardless, the evidence does not support Dr. Brigman's conclusion. For example, plaintiff's mother indicated in her original functional report that plaintiff is able to maintain personal hygiene, help with chores, cook meals for herself, get to school on time, obey rules, and avoid accidents. (Tr. 175.) In the appeal of the Commissioner's original decision, plaintiff did not indicate that she had any illness, injury, or condition that affected her ability to care for her personal needs. (Tr. 208.) Aside from Dr. Brigman's conclusion, her medical opinion testimony contains no mention of personal functional limitations. *See* (tr. 470-71.) Similarly, the evaluation by plaintiff's teacher indicated no problems in the domain of "Caring for Yourself" or "Moving About and Manipulating Objects." (Tr. 201-02.) Independent review by the court confirms the ALJ's conclusion that the record lacks evidence of impaired personal function. As such, the ALJ did not simply ignore evidence in arriving at his conclusion; rather, he made the accurate observation the record did not contain such evidence. (Tr. 18.) Further, plaintiff did not proffer any such evidence, aside from Dr. Brigman's unsupported opinion. An ALJ is not required to accept a physician's opinion that is brief, conclusory, or inadequately supported by clinical findings. *Bayliss*, 427 F.3d at 1216. To the extent Dr. Brigman intended to conclude plaintiff had marked impairment in personal functioning as contemplated by the Act her opinion was brief, conclusory, and unsupported by clinical findings.

Dr. Brigman indicated plaintiff has marked impairment in concentration, persistence, or pace "when either her anxiety is high or her gastro symptoms are triggered." (Tr. 471); *see* § 112.02(B)(2)(d). While the ALJ did not specifically address subpart (d) in the passage regarding Child Listing 112.07, he nonetheless addressed concentration, persistence, or pace in evaluating whether plaintiff met Listing 112.04 for dysthemic disorder and in evaluating Listings 12.04, 12.06, and 12.07. (Tr. 18.) Similarly, the ALJ found plaintiff had no marked limitations in Attending and Completing tasks. (Tr. 22-24.)

The Commissioner argues the ALJ adequately provided specific and legitimate reasons for discrediting Dr. Brigman's opinion regarding concentration, persistence or pace. The ALJ noted plaintiff was receiving A's and B's in the tenth grade, though her grade point average subsequently decreased. (Tr. 22.) The ALJ also noted Dr. Brigman herself indicated plaintiff was *not* limited in school performance or behavior/attention in January 2011. *(*Tr. 23, 374.) The ALJ further explained that plaintiff's mother reported plaintiff completes homework and is able to complete tasks. (Tr. 24, 176, 178.) On the other hand, the ALJ acknowledged plaintiff's teacher's observation that plaintiff has difficulty with "multistep [sic] instructions and completing homework/class assignments." (Tr. 23.)

However, the ALJ is the proper arbiter of ambiguities in the record. *Magallanes*, 881 F.2d at 750. The ALJ reviewed all of the relevant evidence and found plaintiff's difficulties in completing her homework tasks due primarily to her absenteeism. (Tr. 24.) Dr. Brigman's medical opinions were inconsistent, as she indicated plaintiff was not limited in behavior/attention in 2011, but markedly limited in concentration, persistence, or pace in 2013. *Compare* (tr. 374) *to* (tr. 471). The medical record otherwise contains scant evidence of clinical findings suggestive of limitations

in concentration, persistence, and pace. Thus, considering the record as a whole, the court is satisfied the ALJ did not arbitrarily disregard Dr. Brigman's 2013 assessment. Rather, the ALJ appropriately accorded the opinion diminished weight, finding plaintiff has mild difficulty in concentration, persistence, and pace. (Tr. 18.) The ALJ's determination that plaintiff does not meet a Child Listing 112.07 is therefore upheld.

### B. Whether Plaintiff Functionally Equals a Child Listing

Plaintiff argues the ALJ erroneously determined she did not functionally equal a Child Listing. The ALJ must consider all activities in all settings (at home, school, and in the community) in evaluating whether a child functionally equals a Child Listing. Social Security Ruling ("SSR") 09-1p, *available at* 2009 WL 396031, *1-2. The ALJ provided a thorough analysis of each of the six domains in evaluating whether plaintiff functionally equaled listing 112.07. Plaintiff, however, argues the ALJ "failed to consider Dr. Brigman's opinion at all" in assessing the domains. Pl.'s Reply 7. Specifically, plaintiff contends the ALJ "failed to assign the limitations reported by Dr. Brigman to any relevant domain and then evaluate severity." Pl.'s Reply, 7-8.

Plaintiff's argument lacks merit. Regarding the domain of "Acquiring and Using Information," the ALJ noted Dr. Brigman's report that plaintiff was receiving A's and B's. (Tr. 22.) The ALJ also noted plaintiff's teacher reported "very serious problems in learning new material, expressing ideas in written form, and applying problem solving skills in class discussions." (Tr. 23.) However, the ALJ also noted the teacher's report that plaintiff "had only a slight problem in comprehending oral instructions, understanding and participating in class, and in providing oral explanations." *Id.* The ALJ found that plaintiff had "no problem" in understanding information, but that she had problems acquiring information primarily due to absences. *Id.* The ALJ therefore

Page 18 - OPINION AND ORDER

concluded plaintiff had no limitation in acquiring and using information.

Plaintiff generally argues the ALJ "failed to assign the limitations reported by Dr. Brigman to any relevant domain." Pl.'s Reply 7. Plaintiff does not specify what limitation, if any, the ALJ failed to consider in his "Acquiring and Using Information" domain inquiry. Furthermore, as in an adult RFC, the ALJ is not required to assign every limitation proffered by a medical source; only limitations supported by substantial evidence must be incorporated into functional capacity assessments. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001). The ALJ did not err in assessing the "Acquiring and Using Information" domain.

The ALJ found that while plaintiff had some difficulty in the domain of "Attending and Completing Tasks," she nonetheless had less than marked limitation. (Tr. 23.) As described above, plaintiff's teacher reported difficulty with carrying out multi-step problems and completing homework. *Id.* Again, the ALJ opined that plaintiff's difficulties were due to her absenteeism. (Tr. 23.) As discussed in the preceding section, the ALJ reasonably assessed evidence of plaintiff's limitations in concentration, persistence, and pace. *Supra.* Plaintiff argues the ALJ "failed to recognize Plaintiff's absences are a primary reason Plaintiff is severely limited in these domains," but it is clear the ALJ was aware that absences were a primary reason. *See* Pl.'s Br. 18. Plaintiff also argues the ALJ "failed to consider the absences as evidence of impairment." Pl.'s Reply 8. However, the ALJ indicated the absences were due to "a variety of problems, including headaches and menstrual cramps, although primarily gastrointestinal complaints and anxiety." (Tr. 24.) The ALJ acknowledged some limitation, but reasonably interpreted the varied evidence regarding plaintiff's ability to concentrate and complete homework and other tasks from plaintiff, her mother, and Dr. Brigman, and did not find marked limitation. *Id.* The ALJ's rational interpretation must

be upheld. *Tackett*, 180 F.3d at 1098.

The ALJ also found less than marked limitation in the "Interacting and Relating with Others" domain. (Tr. 24.)  The ALJ summarized the evidence, including that plaintiff was sometimes nervous around her friends. *Id.*  The ALJ also noted a history of a referral for anger management and depression, but accorded the evidence minimal weight based on plaintiff's own "emphatic" testimony that she did not have an anger problem. *Id.*  Significantly, the ALJ further noted reports from plaintiff's teacher that she generally had no problems or slight problems in personal interactions at school, and that plaintiff's mother testified that plaintiff got along with her teachers at school. *Id.* Acknowledging some level of difficulty in social functioning, the ALJ found mild impairment. (Tr. 18.) As above, the ALJ is not required to include in a functional assessment limitation issues that are not supported by substantial evidence. *Osenbrock*, 240 F.3d 1164-65.  The ALJ's finding is valid.

The ALJ found less than marked limitation in the domain of "Moving About and Manipulating Objects." (Tr. 25.)  To the degree plaintiff alleges the ALJ failed to incorporate the opinion of Dr. Brigman relative to this domain, independent review of the doctor's opinion reveals no evidence of limitation in this domain.

In the "Caring for Yourself" domain, the ALJ found less than marked limitation.  Although Dr. Brigman indicated plaintiff has marked limitation in personal functioning, the ALJ found plaintiff was "generally able to take care of her personal needs, including hygiene." (Tr. 26.)  For the reasons discussed in the previous section *supra*, the ALJ did not err in declining to adopt Dr. Brigman's opinion as it was unsupported by substantial evidence in the record. *Osenbrock*, 240 F.3d 1164-65.  Plaintiff's teacher observed no problems in personal care, and plaintiff's mother

reported only her belief that plaintiff was unable to use public transportation on her own, though no rationale was provided. (Tr. 175, 202.) The ALJ did not err.

Lastly, the ALJ found plaintiff was not markedly limited in "Health and Physical Well-Being." (Tr. 27.) The ALJ noted plaintiff had "problems associated with her gastrointestinal complaints," but the problems "did not reach the level of 'medical fragility or limitations due to treatment, or any other example cited in the Regulations." *Id.* Plaintiff does not specifically contest the ALJ's finding regarding this domain. *See* Pl.'s Br. 17-18; Pl.'s Reply 2-8. Moreover, Dr. Brigman did not provide an opinion on this domain in her 2013 letter. (Tr. 470-71.) The ALJ recognized plaintiff's difficulties in this domain, but nonetheless determined they amounted to less than marked limitations. (Tr. 27.) In the absence of any contrary argument from plaintiff, and as this finding is supported by substantial evidence, the finding is upheld. *Tackett*, 180 F.3d at 1098.

Based on the foregoing, the court finds the ALJ did not fail to consider Dr. Brigman's opinion in evaluating the domains. Rather, the ALJ's analysis of the domains abides the proper legal standards and is based on substantial evidence. The ALJ's valid findings that plaintiff did not have "marked" limitation in two domains, or "extreme" limitation in any domain, are upheld. *Id.* Accordingly, the ALJ's finding that plaintiff did not meet or equal a listing prior to age 18 is valid. *Id.*

### C. *Whether Plaintiff Meets or Equals an Adult Listing*

After concluding the analysis regarding the child listings, the ALJ found, and plaintiff does not contest, plaintiff had not developed any new impairments since turning age 18. (Tr. 27.) The ALJ indicated that after turning 18, plaintiff continued to experience severe impairment or combination of impairments. *Id.* The ALJ then found that for the same reasons plaintiff did not

meet the Child Listings for an impairment, plaintiff also did not meet the relevant Adult Listings. *Id.* Plaintiff contends that in so doing, the ALJ "failed to discuss Dr. Brigman's opinion, or indeed any other evidence of record." Pl.'s Br. 18. However, the ALJ provided extensive evidentiary analysis regarding why plaintiff did not meet or equal the Child Listings, which is a discussion equally applicable to the Adult Listings inquiry. Rather than repeat the analysis, the ALJ chose to reference the prior analyses and discussion in making his finding. To the degree plaintiff did not satisfy the relevant Child Listings, the Adult Listings too were not satisfied. Plaintiff does not proffer any evidence that would render a different outcome. Plaintiff's argument is unavailing.

IV.    Lay Witness Testimony

Plaintiff alleges the ALJ failed to properly credit the lay testimony of her mother, Kimberly Burkenbine, and of a teacher at plaintiff's high school. Lay witness testimony is competent evidence which an ALJ must take into account unless the ALJ provides specific, germane reasons to disregard the testimony. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *see also Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). The ALJ indicated he accorded "only some weight to Ms. Burkenbine's view of her daughter's problems." (Tr. 21.) The ALJ found that while Ms. Burkenbine testified that plaintiff tends to isolate herself from other people, plaintiff "presents a very different picture of her social activities." (Tr. 21-22.) The ALJ explained that plaintiff provided contrary testimony, as she indicated, "she had friends and did a variety of activities during the summertime." (Tr. 22.) Inconsistent testimony between a plaintiff and lay witness is a germane reason to accord such testimony diminished weight. *Lewis*, 236 F.3d at 512.

Plaintiff argues that her mother's testimony did not contradict her own testimony because her mother reported plaintiff spent time with her sister's significantly younger friends. Pl.'s Br. 26.

Plaintiff explains that she spends time with younger children, which is consequential because in the domain of "Interacting and Relating to Others" one of the issues is whether plaintiff "initiates and develops friendships with children of the same age." *Id.*; *see* SSR 09-05p, *available at* 2009 WL 396026, *6. Presumably, plaintiff asserts that although she spends time with friends in the summertime, those friends are her sister's age, and therefore do not qualify with respect to the domains. Plaintiff's argument fails, however, because regardless of the age of the friends plaintiff referred to in her testimony, the fact that she spends time with friends at all, and participates in various activities, contradicts her mother's testimony that most of plaintiff's time is spent in reclusion in her room. (Tr. 74-75.) Additionally, it is not clear whether the "friends" plaintiff referred to were her own age, or rather her sister's age. (Tr. 21-22; 48.) Again, while plaintiff offers an alternative interpretation of the evidence, the ALJ's interpretation is rational and supported by substantial evidence, and germane to Ms. Burkenbine's testimony. *Tackett*, 180 F.3d at 1098. The finding is upheld.

Plaintiff also argues the ALJ did not provide legally sufficient reasons for rejecting some of the information provided in a questionnaire completed by plaintiff's english and social studies teacher.[1] Pl.'s Br. 26; *see* (tr. 197-202). According to plaintiff, although the ALJ "considered some of the limitations . . . in the domains of Acquiring and Using Information and Attending and Completing Tasks, he rejected all of them . . . [and] failed to provide any reasons[.]" Pl.'s Br. 26-27. As explained above, the ALJ acknowledged the limitations plaintiff's teacher reported in his decision. (Tr. 23.) The ALJ then interpreted the evidence provided by the teacher, finding plaintiff had only slight problems in comprehending oral instructions, understanding and participating in

---

[1] The teacher is not identified by name in the record.

class, and providing organized oral explanations. (Tr. 23.) While the teacher noted plaintiff had "serious problems" in learning new material and completing assignments, the ALJ attributed the problems primarily to plaintiff's poor attendance due to "a variety of problems." (Tr. 23-24.) Thus, to the extent the ALJ did not fully credit plaintiff's teacher, he provided germane reasons for interpreting the proffered evidence as he did. *Molina*, 674 F.3d at 1111.

In sum, the ALJ did not commit reversible error in evaluating the testimony of the lay witnesses.

<u>V.</u>    <u>RFC Formulation</u>

Plaintiff argues the ALJ formulated an erroneous RFC. The RFC is the most a claimant can do despite his restrictions. *See* 20 C.F.R. § 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including a claimant's testimony. SSR 96-8p, *available at* 1996 WL 374184. Only limitations supported by substantial evidence must be incorporated into the RFC. *Osenbrock*, 240 F.3d at 1164-65.

The ALJ indicated plaintiff retained the RFC to perform a full range of work at all levels of exertion, but restricted to "frequent interaction with coworkers or supervisors, and the ability to remember, understand, and carry out instructions and tasks generally associated with occupations with an SVP of 1 to 4. (Tr. 28.) Plaintiff argues the RFC formulation is invalid because it did not include plaintiff's "inability to handle stress, miss[] days at school, and inability to concentrate when [her] anxiety is high." Pl.'s Br. 18-19. However, the ALJ noted he found plaintiff's testimony not fully credible, as discussed above. An ALJ is not required to include less-than-credible evidence in an RFC. *Osenbrock*, 240 F.3d at 1164-65.

Page 24 - OPINION AND ORDER

Plaintiff further argues the ALJ failed to incorporate Dr. Brigman's opinion that plaintiff's physical symptoms were a product of her stress, which caused her to miss school, and therefore would cause her to miss work. Pl.'s Br. 19. Defendant responds that the ALJ reasonably accounted for plaintiff's anxiety symptoms by limiting her to "frequent" interactions with coworkers and supervisors, and jobs requiring no more than a specific vocational preparation ("SVP") of 1 to 4.[2] (Tr. 28.) However, plaintiff further argues limiting her to jobs of "SVP 1 to 4" fails to address plaintiff's limitations in concentration, persistence, or pace. In support, plaintiff cites a recent case wherein an RFC was deemed invalid because it contained a restriction to jobs with an SVP rating of 1-4, which failed to adequately clarify the plaintiff's limitations regarding concentration, persistence, or pace. *See Nava v. Colvin*, Case No. 3:14-cv-1348-AA, 2015 WL 5854074 (D. Or. Oct. 6, 2015).

However, *Nava* is distinguishable. There, the court did not find the ALJ's RFC per se invalid because it proscribed work with SVP 1-4. Rather, the *Nava* court noted, "the record is unclear whether the ALJ found limitations in concentration, persistence, or pace[,]" which rendered the RFC invalid. *Id.* at *6. Specifically, the court was "unable to decipher whether the ALJ accepted or rejected the limitations in concentration, persistence, and pace" because the ALJ "relied solely on SVP ratings in assessing [the] plaintiff's non-exertional limitations." *Id.* at *5. Here, however, the ALJ indicated plaintiff's limitations regarding concentration, persistence, and pace were mild. (Tr. 18.) An ALJ is not required to account for "mild" limitations in the RFC formulation. 20 C.F.R. § 404.1520a(d)(1); 416.920a(d)(1). Further, the ALJ found plaintiff does

---

[2]An SVP of 1-2 indicates the preparation time required for unskilled work, while the preparation time required for semi-skilled work corresponds to an SVP of 3-4. SSR 00-4p, *available at* 2000 WL 1898704, *3.

not have any limitation in "acquiring and using information," and had problems in "attending and completing tasks" due to frequent absences, not because of her ability level. (Tr. 22-24.)

\ \ \ \ \

Thus, the RFC formulation in the instant case does not have the same deficiencies as those discussed in *Nava*.

This court's assessment of the Commissioner's decision is "a highly deferential standard of review." *Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision comports with the record as a whole, and is based on substantial evidence such that "a reasonable mind might accept it as adequate to support a conclusion." *Desrosiers v. Secretary of H.H.S.,* 846 F.2d 573, 575-76 (9th Cir. 1988) (internal citations omitted). As discussed in detail above, the ALJ's RFC formulation is based on substantial evidence in the record. Although plaintiff proposes an alternative interpretation of the evidence, the ALJ's interpretation is reasonable, and must therefore be affirmed. *Lewis,* 498 F.3d at 911.

### Conclusion

For the reasons stated above, the Commissioner's decision is AFFIRMED and this case is hereby DISMISSED.

IT IS SO ORDERED.

DATED this ___8th___ of February, 2016.

JOHN V. ACOSTA
United States Magistrate Judge